U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

FEB 2 6 2013

TONY R. MOORE, CLERK
BY_____DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

---

DEBRA CHENEVERT

versus

CLECO CORPORATION

CIVIL ACTION NO. 11-1707
JUDGE TOM STAGG

---

### MEMORANDUM RULING

Before the court is the second motion for summary judgment filed by the defendant, Cleco Corporation ("Cleco"), seeking dismissal of all remaining claims alleged by the plaintiff, Debra Chenevert ("Chenevert"). See Record Document 119. Based on the following, Cleco's second motion for summary judgment is **GRANTED**.

### I. BACKGROUND[1]

On December 11, 2009, twelve current and former African-American employees of Cleco, brought an action against Cleco, alleging, inter alia, race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, Section 1981 of the United States Code, the Louisiana Employment Discrimination

---

[1]Much of the background is adopted from the court's previous summary judgment ruling.  See Record Document 113.

Law, and the Louisiana Commission on Human Rights. See Record Document 1. On August 4, 2010, Chenevert filed an intervenor complaint alleging the same. See Record Document 25. The court ruled on Cleco's first motions for summary judgment as to the plaintiffs, and the remaining causes of action were severed. See Record Document 115. Regarding the first motion for summary judgment as to the claims of Chenevert, the court dismissed her Title VII claims, state law claims, and Age Discrimination in Employment Act ("ADEA") claims. See Record Document 114. The court now addresses Chenevert's remaining claims of failure to promote, discrimination, retaliation, and hostile work environment brought pursuant to 42 U.S.C. § 1981.

## II. ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion,

---

[2]The court notes that amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.    Failure To Promote.**

Chenevert claims that Cleco failed to promote her to Team Leader - Customer Service Offices in 2007 and to the position of Payroll Analyst in 2008 because of her race. Cleco asserts that these claims have prescribed and are without merit. In her opposition to Cleco's second motion for summary judgment, Chenevert appears to bring her failure to promote claims under her hostile work environment claim instead

3

of bringing them individually.  Regardless, the court will proceed to address those claims individually out of an abundance of caution.

### 1.    Statute Of Limitations.

Section 1981 does not contain a statute of limitations.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 1839 (2004).  When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations."  Id.  Under Louisiana law, "[a] section 1981 claim is best characterized as a tort . . . and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by [Louisiana Civil Code article] 3492."  Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1985).  However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations.  See 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process."  Patterson v. McLean Credit Union, 491 U.S. 164, 179, 109 S. Ct. 2363, 2374 (1989).  Section

4

1981 "did not protect against harassing conduct that occurred after the formation of the contract." Jones, 541 U.S. at 372, 124 S. Ct. at 1840 (citing Patterson, 491 U.S. 164, 109 S. Ct. 2363). Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract. See id. Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of section 1981 or is only made possible by the 1991 amendments. See id. at 382, 124 S. Ct. at 1845. Where the plaintiff's claim was available under the original section 1981, the court must apply the analogous state statute of limitations, which in Louisiana is one year. See id. at 371, 124 S. Ct. at 1839; Taylor, 775 F.2d at 618. However, where the claim is only available under section 1981 as amended, the cause of action is said to "arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies. See Jones, 541 U.S. at 382, 124 S. Ct. at 1845.

Failure to promote claims were actionable under section 1981, prior to the 1991 amendments, if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." Patterson, 491 U.S. at 185, 109 S. Ct. at 2377. As the Supreme Court explained in Patterson, "only where the promotion rises to the level of an opportunity for a new and distinct relation

5

between the employee and the employer is such a claim actionable under [section] 1981." Id. "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." Police Assoc. of New Orleans v. City of New Orleans, 100 F.3d 1159, 1170-71 (5th Cir. 1996). If the new position involves "substantial changes," the failure to promote claim was available under section 1981 prior to the 1991 amendments and Louisiana's one-year prescriptive period applies. See id.; see also Fonteneaux v. Shell Oil Co., 289 F. App'x 695, 699 (5th Cir. 2008). Otherwise, the claim is only available under section 1981 as amended and the four-year statute of limitations applies. See id.

Chenevert began her employment with Cleco in 2003 as a Customer Service Representative in Cleco's Pineville, Louisiana, office. See Record Document 119, Ex. A at 9. In January of 2007, she was promoted to Senior Customer Service Representative. Her duties included answering phone calls, handling customer requests, building and supporting marketing programs, and assisting in resolving complaints brought by the Louisiana Public Service Commission. See id., Exs. A at 10, 13 and B-1. The Team Leader - Customer Service Offices position, for which Chenevert applied in 2007, included the duties of a Senior Customer Representative, in addition to providing continuous feedback to team members by coaching and

6

guiding team member activities throughout the day and overseeing the entire Customer Service Department. See id., Exs. B-1 and B-5. A promotion to the Team Leader position would have resulted in Chenevert receiving a pay increase of two pay grades.[3] See id., Ex. B at ¶ 7. The Payroll Analyst position, for which she applied in 2008, was in a different department from her job as a Senior Customer Representative. See id. at 9. The position's duties included ensuring timely and accurate payments to employees, assisting in maintaining all payroll tax compliance, and performing other tasks necessary for the payroll processing function. See id., Ex. B-8.

Cleco argues that promotions to either of the two positions would have resulted in substantial changes to Chenevert's job responsibilities and salary. Chenevert disputes this and cites to her own declaration and the declaration of Gregory Willis, a co-worker, in support. Not once do these declarations compare her job with the positions about which she complains.

The court finds Cleco's argument to be the more convincing one. A promotion from Senior Customer Representative to either the Team Leader or Payroll Analyst positions would have resulted in a substantial change to Chenevert's job responsibilities and compensation. As a result, her failure to promote claims arise

---

[3]There is a 7.5% difference in the midpoint for each grade. See id., Ex. B at ¶ 7.

7

under section 1981 prior to the 1991 Amendment, and therefore, Louisiana's one-year prescriptive period applies. Cleco filled the Team Leader position in June of 2007 and the Payroll Analyst position in August of 2008, which is more than one year before Chenevert filed her claims in 2010. See Record Document 119, Ex. B at ¶¶ 7, 9. Accordingly, Chenevert's claims are untimely.

### 2.    Merits Of Chenevert's Failure To Promote Claim.

Assuming, arguendo, that Chenevert had brought her failure to promote claims in a timely manner, they still fail on the merits.   "An employee can prove discrimination through direct or circumstantial evidence."[4]  Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 992 (5th Cir. 2005).  For cases of discrimination based on circumstantial evidence, the court applies the McDonnell Douglas burden-shifting analysis.[5]  See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

> To survive summary judgment under McDonnell Douglas,
> the plaintiff must first present evidence of a prima facie
> case of discrimination. If the plaintiff presents a prima

---

[4]Chenevert's failure to promote claims brought pursuant to section 1981 are analyzed under the same standards as a Title VII claim. See Decorte v. Chenevert, 497 F.3d 433, 437 (5th Cir. 2007).

[5]Chenevert does not allege that she possesses direct evidence in support of her failure to promote claims, nor does the court find any in the record.

facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.[6]  If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.[7]

Davis, 383 F.3d at 317 (citations omitted).

Cleco argues that even if Chenevert could establish a prima facie case of discrimination, her failure to promote claims fail on the issue of pretext.  "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer."  McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007).  "A plaintiff may establish pretext 'by showing that a discriminatory motive more likely motivated'" his employer's decision by such evidence as disparate treatment, or that the employer's explanation is unworthy of credence.  Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001) (quoting Defenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 589 (5th Cir. 1998)).  A showing that the plaintiff was "clearly better qualified" than those who were selected for the

---

[6]"The employer's burden is only one of production, not persuasion, and involves no credibility assessment."  McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007).

[7]"[A] plaintiff must present sufficient evidence to find that the employer's asserted justification is false."  Crawford v. Formosa Plastics Corp., 234 F.3d 899, 903 (5th Cir. 2000) (citations and quotations omitted).

position is sufficient to show pretext. See Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010). When conducting a pretext analysis, the court is not to engage in second-guessing an employer's business decisions. See LeMaire v. La. Dept. Of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007). Anti-discrimination laws do not require an employer to make proper decisions, only non-discriminatory ones. See id. (citing Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991)).

### a. Failure To Promote To Team Leader - Customer Service.

In or around December of 2006, the position of Team Leader - Customer Service Offices became available. See Record Document 119, Ex. B at ¶ 7. Chenevert and Terri Thevenote ("Thevenote"), the only two Senior Customer Service Representatives in the Pineville office, were considered for the position. See id., Ex. C at ¶¶ 3, 5. The decision was to be made by Linda McKinney ("McKinney"), the office supervisor, and was subject to the approval of Jimmy Slater ("Slater"), Cleco's Manager of Customer Community Service. See id. at ¶¶ 1, 2, 5. Without the approval of Slater, McKinney informed Chenevert that she was selected for the position. Slater advised McKinney that he disagreed with her decision and instructed her to speak with Human Resources and he would support Human Resources' decision. Gregory Willis from Human Resources contacted McKinney and supported Slater's decision to promote Thevenote instead. See id. at ¶ 7.

10

Thevenote began her employment at Cleco in 1982 in the Customer Service Department. She held a Team Leader position in the Mansfield, Louisiana, office from March of 2001 until July of 2006, when she transferred to Pineville for personal reasons. Because the position of Team Leader at the Pineville office was occupied, she assumed a position as a Senior Customer Service Representative. See id., Ex. B at ¶ 5. Cleco alleges that Thevenote was selected because of her past experience as a Team Leader and her twenty years of customer service experience. Chenevert had approximately four months of experience as a Senior Customer Service Representative and minimal experience as a Team Leader. Cleco further alleges that Thevenote received slightly higher performance appraisals. See id., Ex. C at ¶ 6. Cleco has met its burden at summary judgment; now, the burden shifts to Chenevert to demonstrate that Cleco's legitimate reasons were pretextual.

To demonstrate pretext, Chenevert points to Cleco's promotion of Daniella Myers ("Myers") to the Team Leader position in Cleco's Crowley, Louisiana, office. Myers was promoted to the position without being a Senior Customer Service Representative beforehand. See id., Exs. A at 91 and B at ¶ 8. As previously mentioned, Chenevert may establish pretext by showing disparate treatment. However, "the conduct that drew the adverse employment action must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar

11

employment decisions." Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." Id. "If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." Id. (quoting Wallace, 271 F.3d at 221).

At the time Myers was promoted, there was no senior position in the Crowley office. See Record Document 119, Ex. B at ¶ 8. Additionally, the decision to promote Myers was not made by Slater but by Kathleen Robinaux. See id. For these reasons, Myers and Chenevert can hardly be considered similarly situated. This argument does little to support Chenevert's burden at summary judgment.

Chenevert further alleges that she was more qualified than Thevenote. In support, she states that she:

> worked as cashier with Target Dept. Store. Ms. Chenevert had worked as a Front-end/Cash Office Supervisor, Clerical, and Payroll Analyst. She had worked as a [] temp office lead for Cleco when she began her employment.

12

Record Document 127, Statement of Material Facts at ¶ 10.  While Chenevert may have shown that she was qualified for the position, this does not meet her burden of proof at summary judgment.  She must show that she was clearly better qualified for the position than Thevenote.  Chenevert has not done this.  A comparison of Chenevert's qualifications and Thevenote's qualifications does not demonstrate that no reasonable employer would have made the same decision as Slater.

Chenevert makes several other arguments that fail to demonstrate pretext.  She mentions that, when she complained to Slater about the decision to revoke her promotion, he stated that she should be pleased with her current position or with even having a job.  See Record Document 119, Ex. A at 89-91.  This does nothing to establish pretext.  Chenevert further alleges she can establish pretext through the actions of Ed Taylor and John Melancon, managers in Cleco's Human Resources.  However, most of the allegations concerning them are either conclusory, irrelevant, or are inadmissible as evidence.

### b.    Failure To Promote To Payroll Analyst.

A Payroll Analyst position became available in July of 2008.  See Record Document 119, Ex. B at ¶ 9.  Angie Sealey ("Sealey"), the Payroll Supervisor, and Terry Taylor, the Assistant Controller, decided which applicants would receive

interviews. See id., Exs. E at ¶ 2 and K at ¶ 2. They received between seventy-five and eighty-five applications for the position including Chenevert's application. Seven to eight individuals were selected for interviews. Chenevert was not among them. See id., Ex. E at ¶ 7. Sealey states in her declaration that the position required a keen attention for detail and accuracy, and she looked for candidates who possessed any employment experience which focused on these qualities. Candidates with bachelor's degrees were preferred. Sealey claims that the candidates who were selected for interviews demonstrated these qualities. Chenevert's application for the position contained multiple grammatical errors and typographical errors. See id., Ex. A at D-84. Sealey claims this demonstrated that Chenevert was not the best candidate for the job despite her past payroll experience. See id., Ex. E at ¶¶ 3-5. According to Sealey, Sarah Phillips ("Phillips") was chosen for the Payroll Analyst position because she recently graduated with a Bachelor's Degree in Business Administration, had a high grade point average, and demonstrated the highest level of competency and accuracy in the test portion of the interview. See id. at ¶ 7.

Chenevert attempts to establish pretext by alleging: 1) she had extensive payroll experience from her previous job at Target; and 2) that a white employee, Stephanie Tyler, who had no payroll experience, received an interview. See id., Ex. A at 77-79. Chenevert's qualifications and past work experience at Target and Cleco

14

do not demonstrate that she was clearly better qualified for the Payroll Analyst position than Phillips or Stephanie Tyler. This is especially true considering the position's demand for accuracy and Chenevert's numerous errors on her application. Furthermore, none of the evidence she has presented demonstrates that any of Cleco's reasons were false. Accordingly, this claim must be dismissed.

## C.    Miscellaneous Racial Discrimination And Retaliation Claims.

Chenevert claims that the following were the result of racial discrimination: incidents of rude behavior by Cleco customers and her supervisors' failure to intervene; unfair treatment of other Cleco African-American employees; not being informed of government contracts; and a car accident with a Caucasian Cleco employee in which the other employee was not disciplined.[8] See Record Document 21. To establish her prima facie case under McDonnell Douglas, Chenevert must demonstrate that she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was

---

[8]In January of 2007, while escorting Chenevert to the bank to make a deposit, Kristen Delaney ("Delaney"), a Caucasian Cleco employee, rear-ended Chenevert allegedly causing injury to Chenevert and her vehicle. See Record Document 119, Ex. A at 54, 55. Despite Chenevert's claim that Delaney was not disciplined for the wreck because she was white, Chenevert admits in her statement of material facts that Delaney did receive a written warning for her actions.

> treated less favorably than other similarly situated employees outside the protected group.

McCoy, 492 F.3d at 556.

Chenevert's miscellaneous discrimination claims fail on several grounds. In the context of discrimination claims, adverse employment actions include "only ultimate employment actions such as hiring, granting leave, discharging, promoting, or compensating." Id. at 559 (quoting Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002)). None of the conduct alleged by Chenevert rises to the level of an ultimate employment action. The evidence does not indicate that she has ever been terminated, demoted or suspended, nor has her compensation suffered as a result on any of the alleged conduct.[9] See Record Document 119, Ex. A at 52. Her allegations that other African-American employees have suffered discrimination is irrelevant to her own discrimination claims. Furthermore, Chenevert has not shown that she was treated less favorably than any similarly situated Cleco employees. Accordingly, Chenevert has not established a prima facie case of discrimination, and her claims must be dismissed.[10]

---

[9]Cleco's failure to promote Chenevert is an ultimate employment action; however, the court has already resolved those claims. See supra.

[10]Even if Chenevert had established a prima facie case of discrimination, she has not rebutted Cleco's legitimate, nondiscriminatory reasons for its conduct.

16

**D.    Retaliation.**

Chenevert claims that after she complained to Slater about not receiving the promotion to the Team Leader position in 2007, Slater began retaliating against her. Specifically, she alleges that he isolated her, barely spoke to her, treated her differently than the other employees, asked co-workers if she ever spoke, and did not notify her of government contracts.

To establish a prima facie case of retaliation, a plaintiff must demonstrate that: "1) [she] participated in an activity protected by Title VII; (2) [the] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." McCoy, 492 F.3d at 556-57. An adverse employment action is one that a reasonable employee would have found materially adverse, which means that the action may deter a reasonable employee from engaging in the protected activity. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). "Petty slights, minor annoyances, and simple lack of good manners will not create such a deterrence." Id.

Chenevert does not present sufficient evidence to demonstrate that the alleged actions of isolation and other conduct amounted to materially adverse employment actions. Chenevert has failed to establish her prima facie case of retaliation.

17

Accordingly, her retaliation claims must be dismissed.[11]

## E.   Hostile Work Environment.

In order to establish a hostile work environment claim, Chenevert must prove

that:

> (1) she belongs to a protected group; (2) she was subjected
> to unwelcome harassment; (3) the harassment complained
> of was based on race; (4) the harassment complained of
> affected a term, condition, or privilege of employment; (5)
> the employer knew or should have known of the
> harassment in question and failed to take prompt remedial
> action. For harassment on the basis of race to affect a term,
> condition, or privilege of employment, as required to
> support a hostile work environment claim under Title VII,
> it must be sufficiently severe or pervasive to alter the
> conditions of the victim's employment and create an
> abusive working environment.
>
> In determining whether a workplace constitutes a
> hostile work environment, courts must consider the
> following circumstances: the frequency of the
> discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere offensive
> utterance; and whether it unreasonably interferes with an
> employee's work performance.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (quotations and citations

omitted). "[S]imple teasing, . . . offhand comments, and isolated incidents will not

amount to discriminatory changes in the 'terms and conditions of employment.'"

---

[11]Even if Chenevert had established a prima facie case of retaliation, she has
not rebutted Cleco's legitimate, nondiscriminatory reasons for its conduct.

Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998). "The plaintiff bears the burden of showing that his employer failed to take effective action." Skidmore v. Precision Printing & Packaging, Inc., 188 F.3d 606, 616 (5th Cir. 1999).

Chenevert asserts that the following allegations support her claim of hostile work environment: 1) Cleco's failure to promote her, and 2) incidents in which Cleco failed to intervene when she was harassed by customers. Her failure to promote claims do not support her hostile work environment claim, as they have already been dismissed by this court. Regarding her negative interactions with customers, she alleges that she was subjected to routinely being called "nigger" and other racial epithets by Cleco customers. Her first major negative experience involved a customer who was upset about his billing. Chenevert attempted to assist the customer, but he responded that he did not want to take this from a "nigger" and wanted to speak with another customer representative. See Record Document 119, Ex. A at 23. She reported this incident to her team leader at the time, Susan Guillot ("Guillot"), who intervened, assisted the customer, and informed him that Cleco would not tolerate that type of language in the future. See id., Ex. A at 23-24. During another incident, an irritated, Caucasian customer threw his medicine at Chenevert. She informed her team leader who intervened, told the customer that he would "take care of it", and

19

handed the customer his medicine. See id., Ex. A at 27-29. These are the two major incidents of which Chenevert can recall; however, she alleges that there were many minor incidents in which customers used racial slurs against her and would not let Chenevert wait on them. She reported these incidents to her supervisors but claims her supervisors never did anything. See id., Ex. A at 32-35.

Chenevert's hostile work environment claim fails on several grounds. First, Cleco took prompt remedial action when Chenevert informed her team leaders of hostile customers. In the specific instances mentioned by Chenevert, her team leaders and supervisors intervened and dealt with the customers. In the first incident, Guillot assisted the irate customer and went a step further by informing the customer that his language and treatment of Chenevert would not be tolerated. Furthermore, Chenevert admits in her deposition that she was satisfied with the way Guillot handled the situation. See id., Ex. A at 23-24. Regarding other incidents, Chenevert claims nothing was ever done about hostile customers, but she does admit that supervisors would step in and assist the customer when she complained. See id., Ex. A at 34-35. The fact that Chenevert was not pleased with how Cleco handled every incident does not constitute a hostile work environment. The court finds that Cleco acted reasonably in the situations described by Chenevert. Second, even if Cleco did not take prompt remedial action, Chenevert has not shown that Cleco's actions or

20

inactions were racially based. She merely assumes that Cleco would not properly intervene because she was African-American. Third, while these incidents were certainly stressful and offensive, Chenevert has not demonstrated that the atmosphere was so severe or pervasive as to constitute a hostile work environment. Accordingly, Chenevert's hostile work environment claim must be dismissed.[12]

### III. CONCLUSION

Based on the foregoing analysis, Cleco's second motion for summary judgment (Record Document 119) is **GRANTED**. The court finds there is no genuine dispute as to any material fact with regard to any of Chenevert's claims.

A judgment consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the ___ day of February, 2013.

JUDGE TOM STAGG

---

[12]Chenevert also claims that certain allegations concerning John Melancon and Ed Taylor support her hostile work environment claim; however, this evidence is irrelevant to her claim, as she was not subjected to the alleged conduct.